UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHULI LI, : | |
| *Plaintiff* : | |
| : | |
| v. : | Civil Action No. |
| : | |
| UNIVERSITY OF SCRANTON : | |
| : | |
| *Defendant* : | |
| : | |

# COMPLAINT

Plaintiff Shuli Li ("Plaintiff"), by and through his undersigned counsel, files this Complaint against the Defendant, the University of Scranton ("Scranton" or "the University"). Plaintiff seeks declaratory judgment and injunctive relief, attorneys' fees where applicable, and compensatory damages for violations of Plaintiff's rights under Title IX and because they breached their contract with him. Shuli Li files this lawsuit to redress harms he has suffered as a result of the University's Title IX based decision to expel him and refuse to confer his undergraduate degree to him, despite having paid in excess of $150,000.00 in tuition and completing all of the requirements for doing so. Specifically, Mr. Li alleges that the University had no basis for expelling him based upon off campus sexual misconduct that occurred after he had completed his classwork and days before his graduation that did not involve a student, was not on University property or participating in any University sponsored or related event and more generally, involved any University interest. Mr.

Li further alleges that the University's disciplinary process and decision contravened its own policies and procedures, denied him his right to basic fairness, and deprives him of his University of Scranton degree, jeopardizing his future livelihood, and has caused him significant emotional distress and economic harm.

## INTRODUCTION

1. This case arises from the Defendant's decision to expel Shuli Li ("Li") and their refusal to confer him his degree after investigating him improperly—within days of his graduation—for alleged conduct that fell outside the jurisdiction of the University's policies and procedures.

2. On May 13, 2019, Defendants suspended Li—then a second-semester University senior – for conduct that occurred off-campus on May 11, 2019 and involved a female ("Roe"), who is unaffiliated with the University, and who did not participate in the Title IX investigation.

3. Defendant's (1) summary refusal to confer Mr. Li a degree he paid for and earned; (2) pursuit of an investigation which has no basis in University policies or procedures; (3) erroneous finding that Plaintiff was responsible for violating Title IX policy; and (4) expulsion of Plaintiff, violated his Title IX protections and breached their contract with him.

## JURISDICTION AND VENUE

4. Plaintiff invokes this Court's jurisdiction under Title IX of the Education Act Amendments of 1972, 20 U.S.C. §1681, *et seq.* and 28 U.S.C. §1331.

5. Venue is proper under 28 U.S.C. §§ 1391(b)(1)-(2) because the Defendant resides in or conducts business in this judicial district and because a substantial part of the acts or omissions giving rise to the claims set forth herein occurred in this judicial district.

6. Plaintiff also invokes this Court's jurisdiction to hear diversity cases pursuant to 28 U.S.C. § 1332.

## PARTIES

7. At all times relevant to this complaint, Plaintiff Shuli Li was (and still is) a Chinese citizen, who attended the University of Scranton ("University") as an undergraduate international student on an F-1 visa and majoring in Business Marketing. At the time of the incident that led to the events giving rise to this lawsuit, Mr. Li was a 22-year-old senior within days of graduating with his undergraduate degree and in the process of completing his Fall 2019 semester acceptance into New York University's School of Professional Studies in the M.S. Integrated Marketing program. The Plaintiff is currently incarcerated at SCI-Benner Township.

8. Defendant, the University of Scranton, is a private university located at 800 Linden Street, Scranton, PA, 18510. The University accepts federal financial assistance for its educational programming and activities and therefore subjects itself to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, et. seq.

9. At all times material hereto, the University of Scranton acted by and through its agents, servants, employees, or representatives who were acting in the course and scope of their respective agency or employment or in the promotion of University of Scranton business, mission, or affairs.

**FACTS**

10. Mr. Li is and was a Chinese citizen enrolled as an undergraduate student on an F-1 visa at the University in the Fall of 2015. Beginning at that time and continuing through the events that give rise to this action, Li paid substantial tuition, in excess of $150,000.00, to the University and completed all degree requirements to graduate with a major in Business Marketing and double minor in Psychology and Operation Management.

11. Mr. Li was in good standing with the University in all respects during his four years at the University of Scranton, except for the May 2019 Title IX matter giving rise to this complaint.

12. Mr. Li expected to receive his diploma on May 25, 2019 and had completed the degree requirements for Business Marketing Bachelor of Sciences by

4

that date and had been accepted by NYU's Stern School of Business in their Integrated Marketing graduate program for the Fall of 2019. Prior to the incident, Mr. Li had completed and submitted all course work and requirements for his Business Marketing major.

13. On or about May 11, 2019, Li engaged in sexual intercourse approximately 30 miles off-campus with a minor female ("Ms. Roe") who was not and had never been a University of Scranton student.

14. The incident did not occur on or near University property and was not associated with any University activity.

15. Ms. Roe is not a University student, is not employed by the University, and has no relationship to the University. Ms. Roe never filed a complaint with the University or participated in the University's investigation.

16. On or about May 12, 2019 the University became aware that a criminal complaint had been filed against Mr. Li charging, in sum and substance, that he had sex with Ms. Roe, an underage female.

17. On May 13, 2019, the University formally notified Li that he was being placed on an Interim Suspension effective immediately. The notice indicated that the action "is the direct result of the criminal charges filed against [him] on May 11, 2019 that charge [him] with statutory sexual assault and corruption of minors." Notice of Interim Suspension, pg. 1, Exhibit A.

5

18. On May 15, 2019 Li received a letter from University's Title IX Coordinator and Executive Director of the Office of Equity and Diversity Elizabeth Garcia indicating that he was "under a university sexual harassment and sexual misconduct investigation." Notice of University Sexual Harassment and Sexual Misconduct Investigation, Exhibit B.

19. In the afternoon of May 15, 2019, Ms. Garcia emailed a Notice of Potential Policy Violation to Be Investigated indicating that a complaint was filed alleging that Li engaged in conduct that may be a violation of the University's Sexual Harassment and Sexual Misconduct Policy. Notice of Potential Policy Violation to Be Investigated, Exhibit C. Accordingly, the alleged incident occurred on Saturday, May 11, 2019 and the possible policy violations included VII.(A)(2) Sexual Assault, VII.(A)(3) Sexual Exploitation and VII.(B) Consent related violations.

20. All information used to prepare the complaint for a violation of the University's Sexual Harassment and Sexual Misconduct Policy against Li is from the Affidavit of Probable Cause of the pending criminal complaint—there is no alleged University-victim in this matter and the University assumed the role of Complainant.

**Title IX and the University's Title IX Policy and Procedures**

21. The University of Scranton issues to students a Student Handbook (the "Handbook") which sets forth standards of conduct expected of members of the

University of Scranton community, as well as policies and procedures for investigating and adjudicating complaints made by members of the University of Scranton community. https://catalog.scranton.edu/mime/media/view/42/5075/2018-2019-Student-HandbookFINAL.pdf, Exhibit D.

22. The Handbook defines the University of Scranton community standards. "The University has two codes of behavior; one for academic behavior…and one for social behavior (Student Code of Conduct)…[t]he latter deals with matters outside the context of academic courses." Handbook, pg. 31. The Handbook defines and precludes sexual offenses such as sexual harassment, sexual assault, sexual exploitation, dating violence, domestic violence, stalking and other forms of sexual misconduct.

23. "All forms of sexual harassment and sexual misconduct, including sexual assault, sexual exploitation, intimate partner violence and stalking are governed by and adjudicated through the Sexual Harassment and Sexual Misconduct Policy." Handbook, pg. 46.

24. The University's Sexual Harassment and Sexual Misconduct Policy delineates its disciplinary jurisdiction as applying to "conduct that takes place while on University property, at University sponsored events and activities, and off-campus programs including but not limited to study abroad programs, internships, student teaching, and athletic events. This policy also applies to off campus activity

that violates the policy and has the effect of interfering with or limiting one's ability to participate in or benefit from a work-related or educational program or activity." www.Scranton.edu/equity-diversity/docs/sh-sm-policy.pdf, Sexual Harassment and Sexual Misconduct Policy, pg. 59, Exhibit E.

25. Under Title IX of the Education Amendments of 1972 and its implementing regulations, all institutions that receive federal funds must ensure that no student experiences a deprivation of his or her access to educational opportunities on the basis of sex.

26. Consequently, the University promulgated its Title IX Policy—The University of Scranton's Sexual Harassment and Sexual Misconduct Policy ("Title IX Policy". The version of the Title IX Policy relevant to the allegations in this case was published in December 2018.

27. The University restricts the application of its Title IX Policy to (1) prohibited conduct occurring on "University property"; (2) conduct at "University sponsored events and activities;" (3) "off-campus programs including but not limited to study abroad programs, internships, student teaching, athletic events and business travel; and (4) "off campus conduct that violates this policy and has the effect of interfering with or limiting one's ability to participate in or benefit from a work-related or educational program or activity." Sexual Harassment and Sexual Misconduct Policy, §§1.A and 1.C, pg. 1-2.

28. Further, the Title IX Policy explicitly indicates in the "Time Frame for Reporting" section that the recourse for the University may be limited when the Respondent is no longer affiliated with the University. Sexual Harassment and Sexual Misconduct Policy, pg. 9.

29. With every report of sexual misconduct, the "University will make an immediate assessment of any risk of harm to individuals or to the campus community and will take steps necessary to address those risks." Sexual Harassment and Sexual Misconduct Policy, pg. 22. The continuance of an investigation may depend on "a variety of factors, such as the request of the Complainant not to proceed and the risk posed to the [sic] any individual or the campus community by not proceeding." Sexual Harassment and Sexual Misconduct Policy, pg. 22. Moreover, [a]t all times, the University will seek to respect the request of the Complainant, and where it cannot do so, the University will consult with the Complainant and keep him/her informed about the chosen course of action." Sexual Harassment and Sexual Misconduct Policy, pg. 23.

30. A Title IX inquiry may still move forward under the policy even when a Complainant chooses not to participate in the University's process. "The purpose of this inquiry is to review the report and seek to reach a resolution that will eliminate any harassment, prevent its recurrence, and address its effects." Sexual Harassment and Sexual Misconduct Policy, pg. 24.

31. The "Formal Sexual Harassment and Misconduct Policy Resolution Process" uses a full investigation with the issuance of an Investigation Report and the convening of a Determination Panel. The Investigator "makes a recommendation in the investigation report regarding whether it is more likely than not that the Sexual Harassment and Sexual Misconduct Policy has been violated based upon a 'preponderance of the evidence'" standard. Sexual Harassment and Sexual Misconduct Policy, pg. 27. Subsequently, the "Determination Panel makes a determination, based on a preponderance of the evidence, of whether a student or employee violated The Sexual Harassment and Sexual Misconduct Policy and/or any other applicable University policies based upon the investigative report and materials submitted by the investigator." Sexual Harassment and Sexual Misconduct Policy, pg. 27.

32. Sanction determinations for students are made by the Vice Provost for Student Formation and Campus Life. Sexual Harassment and Sexual Misconduct Policy, pg. 27. The minimum sanction for a student found responsible for a violation of the Title IX policy is disciplinary probation and the maximum penalty is expulsion. Sexual Harassment and Sexual Misconduct Policy, pg. 27.

33. The University will notify the Respondent as to the outcome and sanction in writing "within five (5) business days of the sanction determination." Sexual Harassment and Sexual Misconduct Policy, pg. 28.

34. The University's policies, including but not limited to their Sexual Harassment and Sexual Misconduct Policy, do not provide a Respondent any opportunity to object pursuant to its "jurisdictional" limitations nor does the University provide for any method to adjudicate concerns raised relating to this issue.

35. Appeals by either party may be made within five (5) business days from the time of the notification of the decision. The only allowable grounds per the Title IX Policy for appeal are:

- Procedures set forth in the Sexual Harassment and Sexual Misconduct Policy were not followed;

- New or relevant information, not available at the time of the determination, has arisen;

- The sanctions imposed were excessively harsh or excessively lenient for the violation.

The appeals must be in writing and submitted to the Vice Provost for Student Formation and Campus Life. The "appeal will be referred to an Appeal Panel chosen from a pool of trained professionals from Student Formation & Campus Life, Human Resources, Equity and Diversity and other trained faculty and staff" and typically will be completed in ten (10) business days. Sexual Harassment and Sexual Misconduct Policy, pg. 28.

36. The University does not permit a Respondent to raise jurisdictional limitations issues as part of the appeal process.

37. The Title IX Policy authorizes the "designated University official to whom the appeal was submitted" to determine whether "grounds for appeal have been met and, if so, convene the Appeal Panel." Sexual Harassment and Sexual Misconduct Policy, pg. 28.

**The University's Title IX Policy as Applied to Mr. Li**

38. The Defendant subjected Mr. Li to a disciplinary procedure and sanction even though the policy, by its own terms, does not apply to the misconduct in which he engaged.

39. Mr. Li's continuing presence on University property and his participation in the University's education and other programs created no hostile environment on University property or other property owned or controlled by the University, or in any University education program or activity that the University was required to remedy, resulting from the alleged off-campus conduct involving an individual unaffiliated with the University.

40. Up until this incident, Mr. Li was a student in good standing, and he was scheduled to graduate and receive his degree within days of the incident.

41. The University had received no information of any misconduct by Li during his time as a student, except the allegation that is the subject of the disputed Title IX investigation.

42. From the commencement of the investigation through the period of the graduation exercise in which the University prohibited Mr. Li from participating in, Li had completed all requirements to graduate. After graduation, he would no longer register or enroll as a student or be present on University owned or controlled property and no adverse effects or hostile environment would exist stemming from the alleged misconduct which is the subject of the Title IX investigation.

43. Mr. Li first raised his jurisdictional challenge on June 18, 2019 during his initial investigative interview with its Title IX Investigator, Attorney Maureen Holland, and has consistently raised this challenge at every step in the process.

44. On or about July 14, 2019, Mr. Li's counsel raised the jurisdictional issue with Robert Farrell, General Counsel for the University of Scranton.

45. On or about July 18, 2019, General Counsel advised via a phone conference that they would not be taking any action to intervene in the Title IX proceedings regarding the question of jurisdiction.

46. In her September 19, 2019, Summary Investigation Report, Investigator Holland explicitly refused to consider the jurisdictional objection "[b]ecause the role of the Investigator is to gather facts, not make legal determinations as to jurisdiction or disciplinary authority of the University, the arguments were referred to the University, specifically the Title IX Coordinator and the Office of General Counsel." Summary Investigation Report – Post Determination Panel, pg. 1, Exhibit F.

47. The University of Scranton never issued a ruling, decision, or opinion on plaintiff's jurisdictional challenge. Defendant never advised or provided a mechanism to formally challenge jurisdiction for respondents who, on information and belief, are overwhelming male students.

48. By October 15, 2019, appeal, the plaintiff raised the jurisdictional issue in his appeal. Appeal of Panel Decision, Exhibit G.

49. By October 18, 2019, email, Dr. Anitra McShea denied Mr. Li's appeal characterizing his jurisdictional challenge as "not a question of a procedure not followed, nor does it assert new evidence or an inappropriate sanction." Exhibit H.

50. Following the denial of his appeal, and refusal to consider his objection, University of Scranton's expulsion decision became final and nonreviewable.

## CLAIMS FOR RELIEF

### COUNT I
### *Breach of Contract Against the University*

51. Mr. Li incorporates by reference all of the paragraphs of this Complaint as though fully set forth herein.

52. Mr. Li has paid the University substantial amounts of money for his education, and in return, the University has contracted to provide Mr. Li with access to its undergraduate degree program.

53. Mr. Li's enrollment in and attendance of classes at the University created a reasonable expectation that he would earn his degree from the University,

provided he fulfilled the academic requirements of the Plaintiff's chosen field of study and otherwise remained a student in good standing. The contract offered Mr. Li the opportunity to remain in good standing as long as he abided by the published University rules and regulations.

54. The terms and conditions offered by the University and accepted by Mr. Li upon his matriculation constituted a contractual relationship under which each party owes the other certain duties.

55. The Title IX Policy and Procedures set forth, in relevant part, the requirements of the contractual relationship.

56. Among the representations made by the University is that all Title IX proceedings will apply only to certain categories of conduct under its "Entities Affected By This Policy" provision; that through all stages of the policy—report, review or investigation, and resolution — "the University is committed to maintaining fairness for all parties and to balancing the needs and interests of the individuals involved with the safety of the community as a whole." Sexual Harassment and Sexual Misconduct Policy, pg. 21-22.

57. The University has failed, and is failing, to meet these requirements, including by having subjected Mr. Li to a campus disciplinary process for which it has no jurisdiction under its own policies.

58. More generally, the University has breached, and is breaching, its contractual obligations by subjecting Mr. Li to a disciplinary process that—in the ways, and for the reasons, set out herein—is arbitrary, capricious, and violates the University's policies and procedures.

59. As a direct and proximate result of these breaches, Mr. Li has suffered and will continue to suffer significant harm in the form of the loss of professional opportunity and the loss of the tuition monies paid to the University.

## COUNT II
*Violation of Title IX of the Education Amendments of 1972*

60. Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

61. Title IX of the Education Amendments of 1972 (20 U.S.C. §1681) ("Title IX"), provides, in relevant part, that:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

62. Title IX applies to an entire school or institution if any part of that school receives federal funds; hence, athletic programs are subject to Title IX, even though there is very little direct federal funding of school sports.

63. The Title IX Policy put in place by the University of Scranton deprived Plaintiff, on the basis of his sex, of his rights to due process and equal protection.

The Title IX Policy and the implementation of the procedures discriminates against all respondents, who are habitually male.

64. Defendants also failed and/or refused to follow its existing policies and procedures when investigating the charges against Plaintiff. Specifically, the University of Scranton ignored the jurisdictional constraints of its own policies, placed Mr. Li on immediate suspension without any procedural safeguards effectively depriving him of his degree days prior to conferment, and eventually depriving him of his degree without any meaningful right to confront his accuser.

65. The University of Scranton's existing practices and procedures discriminate, on the basis of sex, against the male accused, including Plaintiff. The University of Scranton conducted its investigation of the allegations against Plaintiff in a manner that was slanted in favor of the female accusers so much so that an actual complainant was not needed in the process.

66. The University of Scranton's policies effectuate a denial of basic fairness for the male student population, because they are set up to encourage and facilitate false reports of sexual misconduct and/or other grievances without any recourse for the falsely accused.

67. The University of Scranton's policies and procedures disproportionately affect the male population of the University of Scranton

community as a result of the higher incidence of female complainants of sexual misconduct versus male complainants of sexual misconduct.

68. The totality of the circumstances establish that Defendants acted out of gender bias in reaching the "erroneous outcome."

69. Defendant University of Scranton required and provided for no reasoned consideration of the Plaintiff's jurisdictional objection. Only an anti-male bias to find for the female complainant and against the male respondent can explain Defendants' purported refusal to enforce or even consider its own policy jurisdictional limitations against male students only.

70. Upon information and belief, all students that have been suspended or expelled from Defendant University of Scranton for sexual misconduct have been male.

71. As a direct and proximate result of the above conduct, Mr. Li sustained tremendous damages, including, without limitation, emotional distress, loss of educational and career opportunities, economic injuries and other direct and consequential damages.

72. As a result of the foregoing, Mr. Li is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements and an injunction enjoining enforcements of the sanctions as a

result of violations of the Title IX process of investigating and adjudicating sexual misconduct complaints and costs and disbursements.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff Shuli Li respectfully prays that this Court enter judgment on his behalf and against the Defendant, and order relief against the Defendant as follows:

(i) That this Court issue permanent injunctive relief, (a) removing all record of the existence of the proceedings from Plaintiff's educational records; and, (b) conferring Plaintiff's degree.

(ii) award to Plaintiff monetary damages, attorney's fees, and costs of suit; and,

(iii) award such further relief as deemed necessary and just by this Court.

Respectfully submitted,

May 12, 2021
/s/ Andrew J. Shubin
Andrew J. Shubin, Esquire
Pa. Attorney ID No. 63263
333 South Allen Street
State College, PA 16801
(814) 867-3115
(814) 867-8811 fax
shubin@shubinlaw.com
Counsel for Plaintiff, Shuli Li